Mary E. Alexander, Esq. (State Bar No. 104173)
Brendan D.S. Way, Esq. (State Bar No. 261705)
MARY ALEXANDER & ASSOCIATES, P.C.
44 Montgomery Street, Suite 1303
San Francisco, California 94104
Telephone: (415) 433-4440
Facsimile: (415) 433-5440

Elizabeth J. Cabraser (State Bar No. 083151)
ecabraser@lchb.com
Jonathan D. Selbin (State Bar No. 170222)
jselbin@lchb.com
LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER WEIDNER, Individually and as Personal Representative of the Decedent, CARL WEIDNER,<br><br>Plaintiff,<br><br>v.<br><br>CARNIVAL CORPORATION, CARNIVAL PLC, and PRINCESS CRUISE LINES LTD.,<br><br>Defendants. | Case No.  2:20-cv-4074<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES**<br><br>1.  NEGLIGENCE – WRONGFUL DEATH, 46 U.S.C. § 30301 *et seq.*<br><br>2.  NEGLIGENCE - WRONGFUL DEATH<br><br>3.  GROSS NEGLIGENCE – WRONGFUL DEATH |

## COMPLAINT

Plaintiff CHRISTOPHER WEIDNER, Individually and as Personal

Representative of the Decedent, his father, CARL WEIDNER, brings this action

against Defendants, PRINCESS CRUISE LINES LTD. ("PRINCESS"),

CARNIVAL CORPORATION, and CARNIVAL PLC (collectively,

"CARNIVAL") and allege:

## THE PARTIES

1. At all times relevant hereto, Decedent CARL WEIDNER was a resident of Lehigh County, Pennsylvania.

2. Decedent CARL WEIDNER was a passenger onboard the Motor Vessel ("M/V") GRAND PRINCESS from February 21, 2020, to disembarkation on or about March 10, 2020.

3. Decedent died on March 26, 2020, at the age of 74, due to COVID-19, which he contracted while a passenger onboard the M/V GRAND PRINCESS, sailing on the high seas.

4. Plaintiff CHRISTOPHER WEIDNER is *sui juris* and is, and was at all times relevant hereto, a resident of Lehigh County, Pennsylvania.

5. Plaintiff CHRISTOPHER WEIDNER is the Decedent's surviving adult biological son.

6. Defendant CARNIVAL CORPORATION was incorporated in 1972 in Panama and has its headquarters in Miami, Florida.

7. Defendant CARNIVAL PLC was incorporated in 2000, in Wales, United Kingdom.  It also has its headquarters in Miami, Florida.

8. Defendant PRINCESS CRUISE LINES LTD. is incorporated in Bermuda, with its headquarters in Santa Clarita, California.

9. Upon information and belief, at all times hereto, CARNIVAL CORPORATION, CARNIVAL PLC, and PRINCESS advertised, marketed, sold, and profited (directly or indirectly) from and owned, controlled, and operated the cruise ship, M/V GRAND PRINCESS.

## ALTER EGO/PIERCING THE CORPORATE VEIL

10. Defendants CARNIVAL CORPORATION, CARNIVAL PLC, AND PRINCESS are alter egos and/or agents of each other such that the corporate form should be disregarded.

PLAINTIFF'S COMPLAINT FOR DAMAGES
CASE NO. _____

11.　　CARNIVAL CORPORATION and CARNIVAL PLC operate as a single economic enterprise. They share a senior executive management team and identical Boards of Directors. Both Carnival Corporation and Carnvial plc share a single headquarters in Miami, Florida.

12.　　As described by CARNIVAL CORPORATION in a filing with the Securities and Exchange Commission ("SEC"), "Carnival Corporation and Carnival plc operate a dual listed company ('DLC'), whereby the businesses of Carnival Corporation and Carnival plc are combined through a number of contracts and through provisions in Carnival Corporation's Articles of Incorporation and By-Laws and Carnival plc's Articles of Association."

13.　　Plaintiff brings this lawsuit against CARNIVAL CORPORATION and CARNIVAL PLC individually, but because the entities work as alter-egos and/or agents of one another, Plaintiff refers to them collectively throughout this Complaint as "CARNIVAL."

14.　　In a federal criminal plea agreement signed by CARNIVAL in 2016, CARNIVAL described PRINCESS as one of several "operating lines" that together comprise the "Carnival Group" of companies. CARNIVAL stated that Princess and the other cruise ship operating lines are semi- autonomous entities within the Carnival Corporation and Carnival plc corporate umbrella.

15.　　In that 2016 federal criminal plea agreement, CARNIVAL stated that it "currently monitors and supervises environmental, safety, security, and regulatory requirements for Princess and other Carnival brands. Carnival Corporation & plc operate a total of 101 ships visiting 700 ports around the world, including most major ports in the United States."

16.　　CARNIVAL has ownership and control over PRINCESS, which is organized under Holland America Group within CARNIVAL. CARNIVAL has claimed in filings with the SEC that it wholly owns PRINCESS as a subsidiary.

PLAINTIFF'S COMPLAINT FOR DAMAGES
CASE NO. _____

17.     CARNIVAL and PRINCESS share the same Board of Directors and almost all of the same executive officers, and appear to use the same assets.

18.     CARNIVAL exerts control and domination over PRINCESS's business and day-to-day operations.

## JURISDICTION

19.     This Court has Admiralty subject matter jurisdiction pursuant to the Death on the High Seas Act, codified at 46 U.S.C. § 30301 *et seq.*  Plaintiff and Decedent suffered harm as the result of an injury that took place more than three (3) nautical miles from the coast of the United States caused by Defendants' wrongful act, neglect, and/or default.

20.     Alternatively, this Court has Admiralty subject matter jurisdiction pursuant to 28 U.S.C. § 1333 as this case involves a maritime tort. The type of incident and injuries suffered by Plaintiff and Decedent had the potential to impact maritime commerce, as Decedent died as a result of exposure to COVID-19 aboard the cruise ship upon which he was a paying passenger.

21.     This Court also has diversity of citizenship jurisdiction pursuant to 28 USC §1332(a)(1) because Plaintiff's claim exceeds $75,000 and because Plaintiff is and was at all times relevant hereto a citizen of a state different from Defendants.

22.     This Court has personal jurisdiction over Defendants, who each conduct substantial business in this district.

23.     Defendant PRINCESS has its headquarters in Santa Clarita, California.

24.     Upon information and belief, CARNIVAL, including by and through its subsidiary, PRINCESS, markets cruise vacations to California residents and employs thousands of California residents to work at its California headquarters. The Court has personal jurisdiction over CARNIVAL because CARNIVAL is authorized to do business in California, conducts substantial business in California and some of the actions giving rise to this Complaint took place in California.

1    25.    Additionally, each of the Defendants purports to be a party to the

2    Passage Contract, which purports to name the Central District of California as

3    proper venue for actions against Defendants.  Plaintiff does not concede the

4    enforceability of the Passage Contract.  Nevertheless, by naming this District as a

5    proper venue, Defendants have consented to personal jurisdiction in this District.

6                                        **VENUE**

7    26.    Venue in the Central District of California is proper under

8    28 U.S.C. § 1391 because Defendants are deemed to reside in any judicial district in

9    which they are subject to personal jurisdiction.

10   27.    Without conceding the enforceability of the Passage Contract, Plaintiff

11   acknowledges that Defendants included in the Passage Contract a venue selection

12   provision designating the United States District Court for the Central District of

13   California in Los Angeles as a proper venue for this action.

14                           **FACTUAL BACKGROUND**

15   **I.    The COVID-19 Pandemic and the Cruise Industry**

16   28.    In December 2019, a new strain of Coronavirus known as COVID-19

17   or SARS-CoV-2 was first observed in humans in China. The virus quickly spread

18   through China and Asia and has caused a global pandemic. Infection with COVID-

19   19 is associated with symptoms such as fever, a dry cough, shortness of breath,

20   infection, pneumonia, and can be fatal. The infection presents particularly high

21   risks of death or severe symptoms to individuals over the age of 65 and those who

22   are immunocompromised or who have pre-existing conditions, such as respiratory

23   illness or heart conditions.

24   29.    As of the filing of this complaint, there have been over 1 million cases

25   and over 64,000 deaths in the United States as a result of COVID-19. Over 1,500

26   cases and, as of this filing, 29 deaths have been reported in San Francisco, at least

27   two of which were due to infections contracted while onboard the M/V GRAND

28   PRINCESS—a ship owned and operated by Defendants.

30.     On January 30, 2020, the World Health Organization declared COVID-19 a global health emergency.

31.     In early February 2020, experts in the European Union, led by epidemiologist Dr. Christou Hadjichristodoulou, released guidelines for the cruise industry that included an outline of the risk of COVID-19 outbreaks aboard cruise ships and recommended response protocols.[1] Specifically, the guidelines directed that, in the event of a COVID-19 case, close contacts of the infected individual should be quarantined in their cabin or on shore, and "casual contacts" should be disembarked.[2]

32.     Defendants CARNIVAL and PRINCESS represent that they have a commitment to "the health, safety, and security" of their passengers and promote their business as one that "always strives to be free of injuries, illness and loss."[3] They further assert that they "[s]upport a proactive framework of risk mitigation in the areas of HESS [Health, Environment, Safety, Security] aimed at preventing, monitoring and responding to threats."[4]

33.     However, in or before early February 2020, Defendants became aware of an outbreak of COVID-19 aboard the cruise ship the M/V DIAMOND PRINCESS, which is operated by CARNIVAL and PRINCESS. The outbreak originated on the DIAMOND PRINCESS while the vessel was docked in Yokohama, Japan. Ten cases were originally diagnosed, and that number rapidly

---

[1] Interim Advice for Preparedness and Response to Cases of Acute Respiratory Disease at Points of Entry in the European Union (EU) / EEA Member States (MS): Advice for ship operators for preparednessand response to the outbreak of 2019-nCoV acute respiratory disease, Feb. 3, 2020, https://www.gac.com/491364/siteassets/about-gac/coronavirus/eu-interim-advice_2019-ncov_maritime_4_2_2020_f.pdf (last visited April 6, 2020); *see also* Matt Apuzzo, Motoko Rich and David Yaffe-Bellany, The New York Times, *Failures on Diamond PrincessShadow Another Cruise Ship Outbreak*, March 8, 2020, https://www.nytimes.com/2020/03/08/world/asia/coronavirus-cruise-ship.html (last visited April 6, 2020).
[2] Healthy GateWays, Algorithm for decision making in response to an event of a suspect case of COVID-19, https://www.nytimes.com/2020/03/08/world/asia/coronavirus-cruise-ship.html (last visited April 6, 2020).
[3] Carnival Health, Environment, Safety, Security & Sustainability Policy & Governance, Carnival Health, Environment, Safety, Security & Sustainability Policy & Governance, https://www.carnivalcorp.com/leading-responsibly/health-environment-safety-security-sustainability-policy-governance/ (last visited April 7, 2020).
[4] Carnival Corporation & PLC Health, Environmental, Safety, Security, and Sustainability Corporate Policy, https://www.carnivalcorp.com/static-files/0b8327aa-c3be-4022-a1a5-a6dad7123af7 (last visited April 7, 2020).

escalated to over 700 cases—over one-fifth of the passengers onboard. Investigative reporting about the M/V Diamond Princess alleges that well after CARNIVAL and PRINCESS became aware of the first case aboard the ship, Defendants worked to "keep the fun going" by "encouraging [guests] to mingle."[5]

34.     To date, at least thirteen (13) of the M/V DIAMOND PRINCESS' passengers have died as a result of COVID-19. At least two of these fatalities occurred before February 19, 2020. [6]

35.     In a February 18, 2020, update issued in response to the crisis aboard the M/V DIAMOND PRINCESS, the Center for Disease Control (CDC) stated that "the rate of new reports of positives [now] on board, especially among those without symptoms, highlights the high burden of infection on the ship and potential for ongoing risk."[7]

36.     Upon information and belief, in February, CARNIVAL also operated a voyage on the M/V RUBY PRINCESS, from New Zealand to Australia. News reports suggest that in mid-to-late February, Defendants became aware of COVID-19 cases onboard the M/V RUBY PRINCESS. Despite this information, CARNIVAL operated a second voyage on the M/V RUBY PRINCESS, immediately following the New Zealand-to-Australia voyage. Since the vessel docked in Australia on March 19, over 600 passengers who were on the Ruby Princess have tested positive for the virus and at least 10 have died. Australian authorities have announced a criminal investigation into the matter.

37.     As of the filing of this complaint, cruises run by CARNIVAL have been identified as responsible for more than 1,500 positive COVID-19 infections, and almost 40 deaths.

---

[5] Austin Carr and Chris Palmieri, Bloomberg, *Socially Distance This: Carnival Executives Knew They Had a Virus Problem, But Kept the Party Going*, April 16, 2020,  https://www.bloomberg.com/features/2020-carnival-cruise-coronavirus/ (last visited April 20, 2020).
[6] *See* The New York Times, *Japan Reports 2 Deaths Among Cruise Ship Passengers*, Feb. 19, 2020, https://www.nytimes.com/2020/02/19/world/asia/china-coronavirus.html (last visited April 6, 2020).
[7] *See* Centers for Disease Control and Prevention, Update on the Diamond Princess Cruise Ship in Japan, Feb. 18, 2020, https://www.cdc.gov/media/releases/2020/s0218-update-diamond-princess.html (last visited April 6, 2020).

PLAINTIFF'S COMPLAINT FOR DAMAGES
CASE NO. _____

## II.   Defendants Failed to Prevent or Address the Viral Outbreak on the M/V Grand Princess

38.   On February 11, 2020, Defendants operated a roundtrip voyage from San Francisco to Mexico aboard the M/V GRAND PRINCESS. On or around February 19, 2020, Defendants were aware of at least one passenger suffering from COVID-19 symptoms onboard the M/V GRAND PRINCESS.

39.   According to CARNIVAL's Chief Medical Officer, Grant Tarling, MD, MPH, Defendants "believed the infected passenger was already carrying the virus when he boarded the M/V GRAND PRINCESS on February 11, 2020.[8] Despite their knowledge regarding COVID-19, Defendants had no effective passenger medical screening methods in place at that time.

40.   Dr. Tarling reported that the infected passenger sought treatment from the medical center onboard the M/V GRAND PRINCESS on February 20, 2020. The passenger reported suffering from "acute respiratory distress" for about a week before seeking medical treatment. Upon information and belief, this information would have triggered mandatory reporting under 42 CFR 71.1 *et seq.* and constitutes a "hazardous condition" per 33 CFR § 160.216.[9]

41.   Upon information and belief, at least three other passengers on the M/V GRAND PRINCESS's Mexico trip suffered from COVID-19 symptoms while on the vessel, likely exposing many other passengers to the virus. At least 100 passengers who traveled on board the M/V GRAND PRINCESS have tested positive for COVID-19, and two passengers who traveled on the M/V GRAND

---

[8] Thomas Fuller, John Eligon, and Jenny Gross, The New York Times, *Cruise Ship, Floating Symbol of America's Fear of Coronavirus, Docks in Oakland*, March 9, 2020, https://www.nytimes.com/2020/03/09/us/coronavirus-cruise-ship-oakland-grand-princess.html (last visited April 7, 2020).
[9] Section 160.216 requires that "[w]henever there is a hazardous condition … on board a vessel or caused by a vessel or its operation, the owner, agent, master, operator, or person in charge must immediately notify the nearest Coast Guard Sector Office . . . ." A "[h]azardous condition means any condition that may adversely affect the safety of any vessel … or the environmental quality of any port, harbor, or navigable waterway of the United States. It may, but need not, involve … injury *or illness of a person aboard* … ." 33 CFR § 160.202 (emphasis added).

PLAINTIFF'S COMPLAINT FOR DAMAGES
CASE NO. _____

1    PRINCESS's Mexico trip died after disembarking. One of these fatalities was the
2    first reported death caused by COVID-19 in California.

3        42.    On February 21, 2020, the M/V GRAND PRINCESS arrived at port in
4    San Francisco and some of the passengers from the Mexico trip disembarked.

5        43.    Approximately sixty-two passengers, at least two of whom were ill,
6    and over 1,000 crew members remained onboard the M/V GRAND PRINCESS to
7    continue traveling on the ship's next voyage, to Hawaii. Defendants did not
8    implement any effective COVID-19 screening or medical examination procedures
9    for crew or passengers who remained onboard and planned to travel on the Hawaii
10   voyage.

11       44.    Defendants did not initiate effective measures to sanitize or disinfect
12   the vessel in-between voyages, and—once again—did not implement any effective
13   procedures for screening or testing new passengers boarding the ship for the Hawaii
14   voyage.

15       45.    Defendants did not notify passengers who were scheduled to board the
16   vessel on February 21, 2020, that passengers from the prior Mexico trip had
17   reported COVID-19 symptoms, or of the fact that passengers and crewand
18   remaining on board the M/V GRAND PRINCESS had been exposed to and might
19   be infected with and/or carrying the virus.

20       46.    On February 21, 2020, Decedent CARL WEIDNER embarked onto
21   the M/V GRAND PRINCESS, and the ship departed the same day. The vessel
22   sailed to Hawaii and made multiple stops on the Hawaiian islands.

23       47.    On February 25, 2020, while Decedent was in the midst of the Hawaii
24   trip aboard the M/V GRAND PRINCESS, Defendants sent emails to passengers
25   who disembarked from the San Francisco-to-Mexico trip on February 21. The email
26   alerted the past passengers about their potential exposure to COVID-19 during their
27   time on the cruise. No such notice was effectively provided to passengers who were
28   onboard the ship on February 25, 2020.

48.   On February 29, 2020, the vessel left Hawaii.

49.   Upon information and belief, increased sanitary precautions did not begin onboard the M/V GRAND PRINCESS until on or about March 3, 2020.

50.   CARNIVAL and PRINCESS did not inform the passengers, including Decedent, on board the M/V GRAND PRINCESS of COVID-19 cases in passengers who traveled on the ship's Mexico trip until on or around March 4, 2020.  Early in the morning on March 4, 2020, passengers onboard the M/V GRAND PRINCESS received a health advisory explaining that the ship would no longer be traveling to Ensenada, Mexico, as originally scheduled, and would instead return directly to San Francisco. The advisory alerted passengers to the investigation of a "small cluster of COVID-19 cases in Northern California connected to" the M/V GRAND PRINCESS's Mexico trip, and informed passengers of their potential exposure to the virus.

51.   The advisory further asserted that COVID-19 causes "mild illness in about 80% of cases," and that only "[a]bout 20% of people develop more severe symptoms."  Although the letter recognized that COVID-19 can have a heightened risk for "older adults," at various points it compared the virus to "regular flu." Notably, a significant number of passengers aboard most cruise ships, including Decedent, are "older adults." On some ships as many as two-thirds of the guests are over 65.

52.   The March 4, 2020 health advisory suggested that passengers traveling on the Hawaii trip had already reported suffering from COVID-19 symptoms, and instructed other passengers who were experiencing or had at any time during the trip experienced symptoms "of acute respiratory illness with fever chills or cough" to immediately contact the ship's Medical Center. Finally, the advisory recommended that passengers wash their hands, use hand sanitizer, avoid contact with those suffering from respiratory illness, cover their noses and mouths when

coughing and sneezing, and avoid touching their eyes and face. It did not make any recommendations for quarantine or social distancing measures.

53.     The March 4, 2020, health advisory was signed by Grant Tarling, MD, MPH, the Group Senior Vice President and Chief Medical Officer for CARNIVAL and its subsidiary PRINCESS.  Tarling is the co-author of an article about respiratory viruses onboard cruise ships.  The study acknowledged that cruise ships "represent a potential source for introduction of novel or antigenically drifted influenza virus strains to the United States"  and that cruise ship characteristics, such as "close quarters and prolonged contact among travelers on ships and during land-based tours before embarkation, increase the risk of communicable disease transmission."[10]

54.     Upon information and belief, individuals who had continued on from the prior leg of the cruise to and from Mexico began cabin-based quarantine for the first time on or around March 4, 2020. At that time, Defendants cancelled only large public gatherings, and continued hosting other events that followed the "Princess Patter," including Formal Night and its associated dinner.

55.     Because of the COVID-19 outbreak on the M/V GRAND PRINCESS, Govenor Gavin Newsom declared a state of emergency on March 4, 2020, to manage the COVID-19 outbreak following the death of a passenger who had been on the Mexico trip. As a result, the State of California refused to allow the vessel into port in San Francisco. The vessel was instead forced to anchor off the coast of San Francisco. Govenor Newsom stated at a press conference that there were 11 passengers and 10 crew members experiencing symptoms.

56.     On or about March 5, 2020, two weeks after the ship sailed, Defendants instituted some operational changes, including cabin/state room

---

[10] Kimberly B. Rogers, MPH, Shahrokh Roohi, MPH, Timothy M. Uyeki, MD, *et al.*, *Laboratory-based respiratory virus surveillance pilot project on select cruise ships in Alaska, 2013-2015*, Journal of Travel Medicine, 1-6, 2 (2017).

PLAINTIFF'S COMPLAINT FOR DAMAGES
CASE NO. _____

1  quarantine, meal service within the cabins/state rooms, and cessation of daily
2  turndown service and communal activities.

3       57.    On or about March 9, 2020, the ship was allowed to sail and arrived in
4  the San Francisco Bay escorted by the Coast Guard. The ship docked in Port of
5  Oakland and was met by ambulances and medical personnel.

6       58.    On or about March 10, 2020, passengers, including the Decedent, were
7  finally allowed to disembark, and were shuttled to Travis Air Force Base in Solano
8  County, California for further quarantine.

9       59.    At the time of this filing, Defendant CARNIVAL has cancelled future
10  cruises embarking from San Francisco through the end of 2020. However,
11  CARNIVAL's website indicates that it intends to begin operating certain cruise
12  ships as early as June 26, 2020, potentially posing grave threats to their passengers,
13  crew members, and the public health.[11.]

14  **III.    Decedent Carl Weidner's Experience**

15       60.    Decedent Carl Weidner was 74 years old at all times relevant to the
16  events described in this Complaint.

17       61.    Decedent boarded the M/V GRAND PRINCESS on February 21,
18  2020, for the voyage en route to Hawaii.

19       62.    On or about March 4, 2020, Decedent called his niece and reported
20  that passengers onboard the M/V GRAND PRINCESS were going to be
21  quarantined and that he did not know when the ship would dock, or when he would
22  be allowed to disembark.

23       63.    On information and belief, at some point while aboard the ship and
24  more than three (3) nautical miles away from shore, Decedent contracted COVID-
25  19.

26

27

28

---

[11] *See* Carnival, Health and Safety Updates, https://www.carnival.com/health-and-sailing-updates (last visited April 21, 2020).

PLAINTIFF'S COMPLAINT FOR DAMAGES
CASE NO. _____

64.     On March 9, 2020, after the ship docked, Decedent was allowed to disembark the vessel and was screened for COVID-19. At that time he did not have a fever.

65.     On the same day, Decedent was transferred to Travis Air Force Base along with other M/V GRAND PRINCESS passengers who had disembarked from the ship. The bus ride to Travis Air Force Base took approximately three hours and thirty minutes, during which the recently disembarked passengers were held in close proximity to one another.

66.     On or before March 11, 2020, Decedent began experiencing and showing symptoms of COVID-19, and, on March 11, 2020, he was taken to the hospital at California Pacific Medical Center. He was put on a respirator and tested for COVID-19. His girlfriend, who had also traveled M/V GRAND PRINCESS's Hawaii trip, remained at Travis Air Force Base.

67.     On March 13, 2020, Decedent received a diagnosis that he tested positive for COVID-19. Three days later, on March 16, 2020, he was told that he would be put on a ventilator.

68.     Decedent remained on a ventilator for ten days and was placed in a medically-induced coma. To protect patients and the public health, he was not allowed any visitors.

69.     On March 26, 2020, Decedent died as a result of infection with COVID-19. His death was the direct and proximate result of his exposure to the virus on the ship due to Defendants' failure to take any effective measures to prevent or mitigate the spread of COVID-19 onboard the M/V GRAND PRINCESS.

70.     Before boarding and embarking upon the February 21, 2020, roundtrip voyage from San Francisco to Hawaii, Defendants knew or should have known the extreme and actual risks of an outbreak of COVID-19 onboard the M/V GRAND PRINCESS. Defendants had already experienced viral outbreak aboard their vessel

the M/V DIAMOND PRINCESS and were aware or should have been aware that passengers on the immediately preceding voyage aboard the M/V GRAND PRINCESS had experienced and reported suffering from COVID-19 symtoms.

71.   Defendants knew the high likelihood of their passengers carrying, spreading, and contracting pathogens, incliuding COVID-19, aboard cruise ships. And—especially in light of the age demographics of cruise line customers— Defendants' knew the likelihood of passengers suffering severe cases of COVID-19 and the likelihood of passengers dying as a result.

72.   Defendants knew or should have known that they were putting Decedent in actual, extreme, and immediate risk of harm by failing to:  notify passengers, including Decedent, of the potential of exposure to COVID-19 onboard the M/V GRAND PRINCESS; implement proper procedures to screen and examine passengers; clean and sanitize the M/V GRAND PRINCESS; isolate and/or quarantine passengers onboard the ship; limit large group activities and events; end the practice of daily turndown service; and/or take other measures to prevent and mitigate the spread of the virus.

73.   Defendants knew or should have known that by failing to proactively warn passengers—including Decedent—and by failing to take actions to limit opportunities for viral spread, they risked serious personal injury and/or death to their passengers.

74.   Nevertheless, Defendants consciously disregarded the known high probability of injury and/or death and chose to instead pursue profits rather than protect the public and their customers, including Decedent. Defendants acted negligently, recklessly, carelessly and maliciously.

## IV.   Relation of Plaintiff's Claims to Class Action Litigation Against Defendants

75.   A proposed class action lawsuit has been filed in the Northern District of California against Defedants PRINCESS and CARNIVAL.  The class action

1  alleges claims of negligence, gross negligence, negligent infliction of emotional
2  distress, and intentional infliction of emotional distress.

3      76.    Although this individual action raises claims in addition to those
4  included in the class action, there exist numerous questions of law and fact—
5  including those related to Defendants' knowledge, conduct, and duty throughout the
6  events described in this Complaint—common to Plaintiff here, CHRISTOPHER
7  WEIDNER, and the Plaintiffs and proposed Class in *Archer v. Carnival Corp.*, No.:
8  3:20-cv-02381 (N.D. Cal.). These common legal and factual issues include, *inter*
9  *alia*:

10      a.    what Defendants knew about the presence and risks associated
11  with the COVID-19 virus, and contagions generally, and when they knew it;

12      b.    whether Defendants should have canceled the subject cruise to
13  avoid exposing passengers to a deadly pathogen and/or taken other steps to avoid
14  exposing passengers to a deadly pathogen;

15      c.    whether Defendants had a duty to decontaminate the M/V
16  GRAND PRINCESS after they knew or should have known that individuals who
17  had been aboard the M/V GRAND PRINCESS prior to the subject cruise were or
18  were potentially carriers of the COVID-19 virus, and/or after it had been disclosed
19  2 days prior to embarking on the subject leg of the cruise that passengers on the
20  Diamond Princess had perished due to the COVID-19 virus;

21      d.    whether Defendants knew or should have known that passengers
22  and crew who had been aboard the M/V GRAND PRINCESS prior to the subject
23  cruise were exposed to or were potentially carriers of the COVID-19 virus;

24      e.    whether the fact that prior passengers and crew had been
25  exposed to or were potential carriers of the COVID-19 virus constitutes a material
26  fact reasonable consumers would have considered in deciding whether to embark
27  on the subject cruise;

28

PLAINTIFF'S COMPLAINT FOR DAMAGES
CASE NO. _____

1           f.     whether Defendants had a duty to disclose that passengers and

2 crew who had been aboard the M/V GRAND PRINCESS prior to the subject cruise

3 were exposed to or were potentially carriers of the COVID-19 virus, and other

4 relevant information;

5           g.     whether Defendants failed to disclose that passengers and crew

6 who had been aboard the M/V GRAND PRINCESS prior to the subject cruise were

7 or were potentially carriers of the COVID-19 virus and other relevant information;

8           h.     interpretation of the applicable contract documents and the

9 associated "Passenger Bill of Rights" incorporated therein;

10          i.     whether Defendants acted as alter egos and/or agents, such that

11 they should be held jointly liable for the conduct alleged herein;

12          j.     whether CARNIVAL CORPORATION is liable for the acts,

13 omissions, and violations described in this Complaint;

14          k.     whether CARNIVAL PLC is liable for the acts, omissions, and

15 violations described in this Complaint; and

16          l.     whether PRINCESS is liable for the acts, omissions, and

17 violations described in this Complaint;

18 **NOTICE**

19     77.    Section 16 (A)(i) of the Passage Contract purports to require that

20 claimants provide notice to PRINCESS and CARNIVAL of any potential claims.

21 Although Plaintiff does not concede that this provision is enforceable, Plaintiff has

22 complied with this requirement by providing written notice to Defendants

23 electronically on April 20, 2020.

24 **CLAIMS FOR RELIEF**

25 **FIRST CAUSE OF ACTION**
**NEGLIGENCE – WRONGFUL DEATH –**

26 **UNDER THE DEATH ON THE HIGH SEAS ACT, 46 U.S.C. § 30301 *et seq.***

27     78.    Plaintiff re-alleges all allegations in all preceding paragraphs as if

28 alleged fully herein.

PLAINTIFF'S COMPLAINT FOR DAMAGES
CASE NO. _____

1
2
3

79.    Defendants owed Decedent CARL WEIDNER, who was a paying passenger that boarded the M/V GRAND PRINCESS on February 21, 2020, a duty to ensure that he would not be exposed to an unreasonable risk of harm.

4
5
6
7

80.    Likewise, Defendants owed Decedent a duty to take actions to prevent and mitigate the risk of threats to his health and safety, including by ensuring that the M/V GRAND PRINCESS was properly cleaned, disinfected, and safely maintained.

8
9
10
11
12
13
14
15

81.    Defendants knew or should have known that cruise ships pose an especially severe risk of viral outbreak. Defendants knew or should have known that cruise ships owned and operated by Defendants had been the sites of prior, lethal outbreaks of COVID-19, and should have been aware of new guidelines for the cruise industry published by Dr. Hadjichristoulou and a team of European experts on February 3, 2020. In particular, Defendants had knowledge of the actual risks facing passengers based on, among other facts, the outbreak of the virus on the Diamond Princess, a mere three weeks prior to the instant outbreak.

16
17
18
19
20
21

82.    Defendants knew or should have known that passengers traveling on the M/V GRAND PRINCESS had suffered COVID-19 symptoms and that passengers and crew aboard the M/V GRAND PRINCESS's San Francisco-Mexico voyage who remained onboard the vessel for the San Francisco-Hawaii voyage were or could have been exposed to and were or could have been carriers of the virus.

22
23
24

83.    Defendants also knew or should have known that COVID-19 posed especially high risks for adults over the age of 65 and that a large number of their passengers, including Decedent, were over the age of 65.

25
26

84.    Defendants failed to do what a reasonably careful cruise ship owner and operator would do under the circumstances.

27
28

-17-

PLAINTIFF'S COMPLAINT FOR DAMAGES
CASE NO. _____

85.    Defendants breached their duties to the Decedent when, with the aforementioned knowledge, Defendants nevertheless chose to go forward with the San Francisco-Hawaii voyage.

86.    Defendants also breached their duties when, with that same knowledge, they chose not to effectively screen or medically examine any passengers or crew, including the approximately sixty-two passengers and over 1,000 crew members who had traveled on the San Francisco-Mexico trip and were also traveling on the San Francisco-Hawaii trip.

87.    Defendants further breached their duties to Decedent when, with the above-mentioned knowledge, Defendants boarded, without additional decontamination and screening protocols, over 2,000 passengeres, including Decedent, onto the likely-infested ship and negligently chose not to notify those passengers of:  the actual risk that the ship was infested with COVID-19 due to prior passengers' infections; the actual and extreme risks of contracting COVID-19 while using facilities on the vessel; and/or the actual and extreme risks of contracting COVID-19 while mingling with passengers and crew who had traveled on the Mexico voyage.

88.    Defendants again breached their duties to Decedent when, throughout the San Francisco-Hawaii voyage, with the aforementioned knowledge, they repeatedly chose not to inform Decedent and his fellow passengers of the continuing and growing risks of contracting COVID-19, and chose not to provide Decedent with the informed option to disembark at one of the vessel's ports of call.

89.    Additionally, Defendants breached their duties to the Decedent when, on or before February 25, 2020, Defendants repeatedly failed to notify passengers aboard the M/V GRAND PRINCESS during the San Francisco-Hawaii voyage that passengers on the Mexico voyage had been diagnosed with COVID-19, that at least one had died, and that certain passengers and crew from that trip remained onboard the M/V GRAND PRINCESS.  Moreover, Defendants breached their duties to

1    Decedent when, after notifying prior M/V GRAND PRINCESS passengers of their

2    potential exposure on February 25, 2020, Defendants continued not to alert

3    passengers on the instant voyage, including Decedent, until the morning of March

4    4, 2020.

5         90.    Finally, Defendants continued to breach their duties to Decedent,

6    throughout the duration of the M/V GRAND PRINCESS's San Francisco-Hawaii

7    voyage, with the aforementioned knowledge and without any warning to the

8    passengers onboard, when they, *inter alia*, chose not to implement quarantine or

9    social distancing protocols; chose to continue operating large, public gatherings,

10   communal activities, and meals—which they encouraged passengers to attend; and

11   chose to continue to operate daily turndown service.

12        91.    It was reasonably foreseeable that, due to these choices, acts,

13   omissions, and negligent behaviors by Defendants, passengers, including the

14   Decedent, would suffer serious injuries and/or illness, suffer complications from

15   those injuries and/or illness, and die as a result.

16        92.    As a direct and proximate result of Defedents' wrongful acts and

17   outrageous failures to safeguard Decedent, Decedent contracted COVID-19 while

18   onboard the M/V GRAND PRINCESS more than three (3) nautical miles from the

19   shore of the United States.

20        93.    Decedent was forced to spend days at Travis Air Force Base, was sent

21   to the hospital at California Pacific Medical Center, spent over two weeks in the

22   hospital—ten days of which were spent on a respirator in a medically-induced

23   coma—and subsequently died.

24        94.    As a direct and proximate result of Defendants' wrongful acts and

25   outrageous failures to safeguard Decedent, Plaintiff CHRISTOPHER WEIDNER

26   has sustained and will incur pecuniary damages caused by Decedent's death

27   including funeral and burial expenses, the loss of financial support Decedent would

28   have contributed to the family; the loss of inheritance; the loss of gifts or benefits

that Plaintiff would have expected to receive from Decedent; the reasonable value of household services that Decedent would have provided, and other losses, the full nature and extent of which are not yet known to Plaintiff, and leave is requested to amend this Complaint to conform to proof at the time of trial.

**SECOND CAUSE OF ACTION**
**COMMON LAW NEGLIGENCE –WRONGFUL DEATH**

95.    Plaintiff re-alleges all allegations in all preceding paragraphs as if alleged fully herein.

96.    Out of an abundance of caution, including if this Court should determine that the Death on the High Seas Act, 46 U.S.C. § 30301 *et seq.*, does not apply in this case, Plaintiff additionally alleges in the alternative that Defendants are liable for Decedent's wrongful death under maritime common law negligence.

97.    Defendants owed Decedent CARL WEIDNER, who was a paying passenger that boarded the M/V GRAND PRINCESS on February 21, 2020, a duty to ensure that he would not be threatened with an unreasonable risk of harm.

98.    Defendants owed Decedent a duty to take actions to prevent and mitigate unreasonable risks of threats to his health and safety, including by ensuring that the M/V GRAND PRINCESS was properly cleaned, disinfected, and safely maintained.

99.    Defendants knew or should have known that the threat of contracting COVID-19 aboard the M/V GRAND PRINCESS was unreasonably high and posed a severe risk of injury and/or death.

100.    Nevertheless, Defendants failed to take effective measures to prevent, limit, or address the spread of COVID-19 aboard the M/V GRAND PRINCESS. Defendants breached their duties to the Decedent by, among other things, refusing to cancel the February 21, 2020 voyage aboard the M/V GRAND PRINCESS and by boarding passengers onto a ship Defendants knew or should have known was

1   contaminated with COVID-19 alongside passengers and crew members who had

2   been exposed to, and were likely vectors of, the virus.

3       101.   Defendants also breached their duties to Decedent by failing to take

4   appropriate and effective measures to clean, sanitize, and/or disinfect the M/V

5   GRAND PRINCESS in between the Mexico-San Francisco voyage and the San

6   Francisco-Hawaii voyage, or after embarkation and during the Hawaii trip.

7       102.   Defendants further breached their duties when they chose not to

8   implement effective medical screenings or examinations for passengers already

9   onboard and/or for those newly boarding the ship, and did not establish social

10  distancing or quarantine protocols for any passengers until on or before March 5,

11  2019.

12      103.   Defendants also breached their duties when they did not disembark

13  those passengers and crew members from the prior Mexico voyage who were

14  known to have been exposed to COVID-19, and when they did not institute

15  effective measures of social distancing and / or quarantine for those passengers and

16  crew members, in order to limit the spread of COVID-19 among newly boarded

17  passengers.

18      104.   Defendants additionally breached their duties to Decedent when they

19  failed to notify passengers, including Decedent, of:  the risk of contracting COVID-

20  19 while aboard the M/V GRAND PRINCESS; the presence on the vessel of

21  passengers and crew members who had been exposed to COVID-19; and of the

22  option and potential health benefits of disembarking from the ship at one of its ports

23  of call.

24      105.   Defendants further breached their duties to Decedent by actively

25  encouraging passengers, including Decedent, to attend large gatherings and events

26  and "mingle" with other passengers, and when they failed to take other measures in

27  limiting interactions among passengers and crew members, such as by ceasing to

28  offer turndown service.

-21-

PLAINTIFF'S COMPLAINT FOR DAMAGES
CASE NO. _____

106.   As a direct and proximate result of Defedents' wrongful acts and outrageous failures to safeguard Decedent, Decedent contracted COVID-19.

107.   Decedent was forced to spend days at Travis Air Force Base, was sent to California Pacific Medical Center, spent over two weeks in the hospital—ten days of which were spent on a respirator in a medically-induced coma—and subsequently died.

108.   As a direct and proximate result of Defendants' wrongful acts and outrageous failures to safeguard Decedent, Plaintiff CHRISTOPHER WEIDNER has sustained and will incur damages, including wrongful death damages and other losses, the full nature and extent of which are not yet known to Plaintiff, and leave is requested to amend this Complaint to conform to proof at the time of trial.

**THIRD CAUSE OF ACTION**
**COMMON LAW GROSS NEGLIGENCE –WRONGFUL DEATH**

109.   Plaintiff re-alleges all allegations in all preceding paragraphs as if alleged fully herein.

110.   Out of an abundance of caution, including if this Court should determine that the Death on the High Seas Act, 46 U.S.C. § 30301 et seq., does not apply in this case, Plaintiff additionally alleges in the alternative that Defendants are liable for Decedent's wrongful death under maritime common law gross negligence.

111.   Defendants owed Decedent CARL WEIDNER, who was a paying passenger that boarded the M/V GRAND PRINCESS on February 21, 2020, a duty to ensure that he would not be exposed to an unreasonable risk of harm.

112.   Likewise, Defendants owed Decedent a duty to take actions to prevent and mitigate the risk of threats to his health and safety, including by ensuring that the M/V GRAND PRINCESS was properly cleaned, disinfected, and safely maintained.

1      113.   Defendants knew or should have known that cruise ships pose an

2   especially severe risk of viral outbreak. Defendants knew or should have known

3   that cruise ships owned and operated by Defendants had been the sites of prior,

4   lethal outbreaks of COVID-19, and should have been aware of new guidelines for

5   the cruise industry published by Dr. Hadjichristoulou and a team of European

6   experts on February 3, 2020. In particular, Defendants had knowledge of the actual

7   risks facing passengers based on the outbreak of the virus on the Diamond Princess,

8   a mere three weeks prior to the instant outbreak.

9      114.   Defendants knew or should have known that passengers traveling on

10   the M/V GRAND PRINCESS had suffered COVID-19 symptoms and that

11   passengers aboard the M/V GRAND PRINCESS's San Francisco-Mexico voyage

12   who remained onboard the vessel for the San Francisco-Hawaii voyage were or

13   could have been exposed to and were or could have been carriers of the virus.

14      115.   Defendants knew or should have known that crew aboard the M/V

15   GRAND PRINCESS were or could have been exposed to COVID-19 and were or

16   could have been carriers of the virus.

17      116.   Defendants also knew or should have known that COVID-19 posed

18   especially high risks for adults over the age of 65 and that a large number of their

19   passengers, including Decedent, were over the age of 65.

20      117.   Defendants' conduct in deciding to continue to operate the M/V

21   GRAND PRINCESS, even with the aforementioned knowledge, demonstrates an

22   intentional failure to do what a reasonably careful cruise ship owner and operator

23   would do under the circumstances, exhibits a willful and conscious disregard for the

24   Decedent, and evidences recklessness and indifference by Defendants, which

25   constitutes gross negligence.

26      118.   Defendants' decision not to effectively clean, sanitize, or disinfect the

27   M/V GRAND PRINCESS, despite their aforementioned knowledge that the ship

28   likely was infested with COVID-19, demonstrates an intentional failure to do what

PLAINTIFF'S COMPLAINT FOR DAMAGES
CASE NO. _____

1  a reasonably careful cruise ship owner and operator would do under the
2  circumstances, exhibits a willful and conscious disregard for the Decedent, and
3  evidences recklessness and indifference by Defendants, which constitutes gross
4  negligence.

5       119.   Defendants' failure to abide by the guidelines issued on February 3,
6  2020, by not disembarking, on February 21, 2020, passengers known to have been
7  in casual contact with individuals who reported COVID-19 symptoms and were
8  later diagnosed with the virus, constitutes a failure to provide even a modicum of
9  care to Decedent. Furthermore, the continued and repeated choice not to quarantine
10 or otherwise shelter in their cabins the passengers and crew members who traveled
11 on the San Francisco-Mexico voyage demonstrates a willful and conscious
12 disregard for the rights and safety of others and amounts to an extreme departure of
13 what a reasonably careful cruise ship owner and operator would do.

14      120.   Defendants' choice not to warn Decedent of his actual risk of harm in
15 being exposed to COVID-19, either prior to boarding or while he was already on
16 board, in light of the prior passenger who came down with symptoms and later
17 died, along with others from that prior voyage that exhibited symptoms, and the
18 crew member who disembarked during this voyage due to COVID-19-related
19 illness, constitutes a failure to provide even a modicum of care to Decedent. The
20 continued and repeated choice to provide passengers, including Decedent, with no
21 notice of the actual risks facing them demonstrates a willful and conscious
22 disregard for the rights and safety of others and amounts to an extreme departure of
23 what a reasonably careful cruise ship owner and/or operator would do.

24      121.   Moreover, Defendants demonstrated a willful and conscious disregard
25 for the rights and safety of others and an extreme departure of what a reasonably
26 careful cruise ship owner and/or operator would do through their continued and
27 repeated choices to:  not effectively sanitize and disinfect the M/V GRAND
28 PRINCESS, either before or during the San Francisco-Hawaii voyage; not institute

PLAINTIFF'S COMPLAINT FOR DAMAGES
CASE NO. _____

1    medical screening and examinations for passengers and crew members; host large

2    social gatherings and meals; conduct daily turn-down service; and not impelement

3    quarantine or social distance protocols until on or around March 5, 2020. These

4    decisions manifest Defendants' utter failure to provide even a modicum of care to

5    Decedent.

6         122.   Defendants prioritized profits over people and continued to operate

7    business as usual, despite their knowledge that the COVID-19 global pandemic and

8    the condition and environment of the M/V GRAND PRINCESS posed an actual,

9    potentially-lethal, risk to the safety and well-being of the general public, their crew,

10   and their passengers, including Decedent.

11        123.   As a direct and proximate result of Defendants' failure to provide even

12   scant care to Decedent CARL WEIDNER, Decedent was placed at actual, continual

13   risk of immediate, and deadly, physical harm.

14        124.   As a direct and proximate result of Defedents' wrongful acts and

15   outrageous failures to safeguard Decedent, Decedent contracted COVID-19.

16        125.   Decedent was forced to spend days at Travis Air Force Base, was sent

17   to the California Pacific Medical Center hospital, spent over two weeks in the

18   hospital—ten days of which were spent on a ventilator and in a medically-induced

19   coma—and subsequently died.

20        126.   As a direct and proximate result of Defendants' wrongful acts and

21   outrageous failures to safeguard Decedent, Plaintiff CHRISTOPHER WEIDNER

22   has sustained wrongful death damages. Additionally, Plaintiff CHRISTOPHER

23   WEIDNER has incurred, and will incur, wrongful death damages and other losses,

24   the full nature and extent of which are not yet known to Plaintiff, and leave is

25   requested to amend this Complaint to conform to proof at the time of trial.

26

27

28

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and as Personal Representative of the Decedent CARL WEIDNER, prays for judgment against Defendants, and each of them, as follows:

1.      For pecuniary damages arising as a result of Decedent's wrongful death, including but not limited to, funeral and burial expenses, the loss of financial support Decedent would have contributed to the family; the loss of inheritance; the loss of gifts or benefits that Plaintiff would have expected to receive from Decedent; the reasonable value of household services that Decedent would have provided, past and future loss of love, companionship, comfort, care, assistance, protection, affection, society, moral support, training and guidance of Decedent, and all other damages recoverable under applicable law.

2.      An award of attorneys' fees and costs, as allowed by law;

3.      An award of pre-judgment and post-judgment interest, as provided by law;

4.      For such other and further relief as the Court deems just and proper.

Dated:       May 4, 2020          Respectfully submitted,

MARY ALEXANDER & ASSOCIATES, P.C.

By: _Mary E. Alexander_____
Mary E. Alexander, Esq.
Brendan D.S. Way, Esq.

1

Dated:      May 4, 2020          LIEFF CABRASER HEIMANN &
                                 BERNSTEIN, LLP

2

3
                                 By: _____

4                                    Elizabeth J. Cabraser, Esq.
                                     Jonathan D. Selbin, Esq.
5

6                                    *Attorneys for Plaintiff*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S COMPLAINT FOR DAMAGES
                                                 CASE NO. _____